UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN BRAXTON,

                        Plaintiff,

          -against-

JAMES NICHOLS, JOHN NUTTALL,
LICIEN J. LECLAIRE, JR., GAYLE
HAPONIK, ANTHONY J. ANNUCCI and
LESTER WRIGHT,

                     Defendants.

```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:                           │
│ DATE FILED: 3-18-2010            │
└─────────────────────────────────┘
```

**MEMORANDUM OPINION
AND ORDER**

08 Civ. 08568 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       Pro se Plaintiff Benjamin Braxton alleges that his rights under the Eighth

Amendment to the United States Constitution were violated by his exposure to a

dangerous level of environmental tobacco smoke ("ETS"), commonly known as

secondhand smoke, caused by the Defendants' deliberate indifference. The Complaint

seeks compensatory and punitive damages. (Cmplt. at 16) Defendants have moved to

dismiss Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For the reasons stated below, Defendants' motion (Docket No. 9) will be granted as to

Count II but otherwise denied.

## DISCUSSION

       "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. --, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 570 (2007)). To meet this standard, a complaint's factual

allegations must permit the Court, "draw[ing] on its judicial experience and common

sense," "to infer more than the mere possibility of misconduct." Id. at 1950. "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Because Plaintiff is proceeding pro se, the Court construes the complaint liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), "interpret[ing] it to raise the strongest arguments that it suggests." Harris v. Westchester County Department of Corrections, No. 06 Civ. 2011(RJS), 2008 WL 953616, at *2 (S.D.N.Y. Apr. 3, 2008) (internal quotation omitted). Moreover, allegations made in a pro se plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss. See Coakley v. 42nd PCT. Case 458, No. 08 Civ. 6202 (JSR), 2009 WL 3095529, at *3 (S.D.N.Y. Sept. 28, 2009); Donahue v. U.S. Dep't of Justice, 751 F. Supp. 45, 49 (S.D.N.Y. 1990).[1]  As in any other case, however, the Court accepts as true only factual allegations, and does not accept as true allegations stating only legal conclusions. Harris, 572 F.3d at 72 ("[T]hreadbare recitals of a cause

---

[1]  See also Oliver v. Haddock, No. 08 Civ. 4608(DAB)(GWG), 2009 WL 4281446, at *2 (S.D.N.Y. Dec. 1, 2009) (citing Woods v. Goord, No. 01 Civ.. 3255 (SAS), 2002 WL 731691, at *1 n.2 (S.D.N.Y. Apr. 23, 2002) (considering pro se prisoner's factual allegations in briefs as supplementing the complaint); Burgess v. Goord, No. 98 Civ. 2077 (SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999) ("In general, 'a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum.'" (quoting Gadson v. Goord, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citations omitted))).

2

of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." (quoting Iqbal, 129 S.Ct. at 1949)).

## I. FACTS

For purposes of deciding Defendants' motion to dismiss, the Court assumes that the following factual allegations in the Complaint, and in documents that the Complaint incorporates by reference,[2] are true: On July 31, 1996, Braxton was convicted in state court, and on September 6, 1996, he was incarcerated at Gowanda Correctional Facility, where he was housed with a substantial number of frequent or chain smokers.[3] (Id. ¶ 14) On February 7, 2000, Plaintiff was transferred to Fishkill Correctional Facility, where he was again housed with numerous frequent or chain smokers. (Id. ¶ 15) On November 8, 2000, Defendant Annucci, Deputy Commissioner and Counsel, and Defendant Leclaire, Jr., Deputy Commissioner for Correctional Services, forwarded a memorandum to all facility superintendents announcing the Department of Correctional Services' ("DOCS") indoor smoking ban. (Id. ¶ 16)

Plaintiff was transferred on March 12, 2001, to Mid-Orange Correctional Facility, where he was once more housed with inmates who were frequent or chain smokers. (Id. ¶ 17) Between April 2, 2001, and October 12, 2003, Plaintiff served as a

---

[2] The Court may consider documents incorporated by reference in the Complaint without converting Defendants' motion to dismiss to a motion for summary judgment. See Kamholtz v. Yates County, No. 09-0026-cv, 2009 WL 3463481 (2d Cir. Oct. 29, 2009); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

[3] While Plaintiff also complains about being exposed to secondhand smoke as a pretrial detainee at Rikers Island (Cmplt. ¶ 13), such a claim is not cognizable under the Eighth Amendment. Accordingly, in ruling on Defendants' motion to dismiss, the Court considers only the events occurring after Plaintiff's state court conviction. See Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir. 1991) (because prisoner was a pre-trial detainee, she had no Eighth Amendment claim).

3

porter in the bathrooms, laundry rooms, shower areas and single rooms of the D1-Block
where he was housed. In performing his porter duties, Plaintiff "was constantly
bombarded with Secondhand smoke which compromised Plaintiff's health and safety."
(Id. ¶ 19) After serving time in the Segregated Housing Unit as the result of a
disciplinary infraction, Plaintiff was moved to the D2-Block at Mid-Orange on
September 10, 2004, where he continued working as a porter. (Id. ¶ 21) During his
porter duties in the D2-Block, Plaintiff was again exposed to regular smoking by inmates
in the bathroom stalls, shower areas, dayrooms, and single rooms throughout the day.
(Id. ¶ 22)

On April 25, 2007, former Mid-Orange Superintendent D.L. Van Buren
forwarded a memorandum to prison personnel about the facility's new "Indoor Smoke
Free Policy." (Id. ¶ 23) On October 15, 2007, Plaintiff submitted his first grievance that
relates to this action. Plaintiff complained that secondhand smoke was causing irritation
to his lungs.[4] (Cmplt. ¶ 24; Schulman Dec. Ex. A) The facility inmate grievance
committee reviewed Plaintiff's grievance and determined that his medical concerns
should be addressed through "sick call." (Schulman Dec. E. A at 3) Plaintiff appealed to
the Superintendent on November 6, 2007, and on November 13, 2007, the Superintendent
issued a decision advising Plaintiff "to address his medical concerns through sick call."
(Id. at 2) Plaintiff met with a doctor on November 21, 2007, but claims that his concerns
about lung irritation from secondhand smoke were not addressed. (Cmplt. ¶ 27) Prior to
this doctor's visit, Plaintiff appealed the Superintendent's decision to the Central Office

---

[4] Plaintiff also wrote to the Department of Health on October 29, 2007, complaining
about the facility's inadequate ventilation. (Cmplt. ¶ 24)

4

Review Committee ("CORC") on November 17, 2007, on the basis that his "medical concerns were not being addressed." (Id. ¶ 26; Schulman Dec. Ex. A at 2) CORC sustained the Superintendent's decision on December 17, 2007, noting that Plaintiff had already been seen by a doctor and that he could address any additional medical concerns through the regular sick call procedures. (Cmplt. ¶ 28; Schulman Dec. Ex A at 1)

Plaintiff's complaints about secondhand smoke continued. On December 15, 2007, he wrote to Defendant Nichols, then Mid-Orange Superintendent, to report that inmates were smoking in the upper and lower gymnasiums and in other common areas. (Cmplt. ¶ 30; Pltf. Ex. 16) Plaintiff stated that he was experiencing headaches, nausea, congestion, and respiratory complications because of exposure to the secondhand smoke. (Id.) Acting Superintendent Jacobsen responded to Plaintiff's letter. Plaintiff does not describe the contents of this response. (Id. ¶ 31) Plaintiff wrote two additional letters to Superintendent Nichols on January 19 and 22, 2008, complaining about the failure to enforce the facility's indoor smoking ban and alleging that correctional officers were smoking inside the facility. Plaintiff does not indicate who received these letters or whether he received any response. (Id. ¶¶37-38; Pltf. Exs. 18-19)

On March 13, 2008, Plaintiff filed a second inmate grievance, requesting the creation of a "non-smoking dormitory" to house non-smoker inmates. (Schulman Dec. Ex. B at 19-20) Plaintiff provided a lengthy discussion of the dangers associated with exposure to secondhand smoke. (Id. at 20-22, 27-32) Although Plaintiff did not explicitly request that the existing non-smoking policy be enforced, he stated that his "health has been compromised and . . . [that his] health and safety is in jeopardy." (Id. at 28, 29; Cmplt. ¶ 43) On March 27, 2008, the facility grievance committee instructed

Plaintiff to resubmit his grievance in the form of a project proposal and to submit it to the Deputy Superintendent of Programs. (Cmplt. ¶ 44; Schulman Dec. Ex. B at 18)  Plaintiff instead appealed to Superintendent Nichols, who issued a decision on March 28, 2008, noting that indoor smoking was already prohibited by DOCS policy and advising Plaintiff to submit his proposal to the facility executive team. (Schulman Dec. Ex. B at 17)

Plaintiff chose instead to appeal Defendant Nichols' decision to CORC. His appeal states: "Grievant request[s] the facility to provide a smoke-free dorm and conduct a logistical survey to determine the practicality of implementation of grievant's request." (Id.) On May 7, 2008, CORC denied Plaintiff's proposal for a non-smoking dormitory, noting that there was no evidence suggesting malfeasance by staff members and that Plaintiff should address complaints about indoor smoking to security staff. (Id.) The Complaint does not allege that Plaintiff ever made such a complaint.

## II.    PLAINTIFF SUFFICIENTLY ALLEGES DELIBERATE INDIFFERENCE

To prevail on his claim against the individual defendants under 42 U.S.C. § 1983, Plaintiff must show:  (1) that the defendants "were acting under color of state law;" and (2) that "their actions deprived the plaintiff of a right guaranteed by the constitution or laws of the United States." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  Here, Plaintiff attempts to establish the second element of his Section 1983 claim by alleging that the individual defendants violated the Eighth Amendment of the United States Constitution. (Cmplt. ¶¶ 16-17)

Alleged Eighth Amendment violations by prison officials are governed by a two-part test:  (1) whether the conditions of confinement objectively posed "a substantial risk of serious harm" to the inmate; and (2) whether the prison official, as a subjective matter, was "deliberate[ly] indifferent" to the inmate's health or safety.

6

Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal citations and quotation marks

omitted).  An objective risk of substantial harm may exist even if an inmate experiences

no current symptoms.  A risk of serious future harm is sufficient, Smith v. Carpenter, 316

F.3d 178, 188 (2d Cir. 2003) (noting that "an Eighth Amendment claim may be based on

a defendant's conduct in exposing an inmate to an unreasonable risk of future harm and

. . . actual physical injury is not necessary in order to demonstrate an Eighth Amendment

violation."), but the inmate must show that the risk of future harm is "so grave that it

violates contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 36

(1993).

   A plaintiff must also demonstrate that the defendants were deliberately

indifferent in that "the acts of defendants involved more than lack of due care, but rather

involved obduracy and wantonness in placing [plaintiff's] health in danger. . . . In other

words . . . defendants knew of the health dangers and yet refused to remedy the

situation."  LaBounty v. Coughlin, 137 F.3d 68, 72-73 (2d Cir. 1998).  This subjective

element "entails something more than mere negligence . . . but something less than acts

or omissions for the very purpose of causing harm or with knowledge that harm will

result."  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (citing Farmer, 511 U.S.

at 835). This means that "a prison official must know of and disregard an excessive risk

to inmate health or safety; the official must . . . be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, . . . draw the

inference and fail to take reasonable measures to abate it."  Trammell v. Kean, 338 F.3d

155, 164 (2d Cir. 2003)(citing Farmer, 511 U.S. at 837, 847).  "Plaintiff need not show

actual knowledge of the risk of harm, but rather can present [] evidence showing that a

substantial risk . . . was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Farmer, 511 U.S. at 842.

Applying these principles to Braxton's claims, he must demonstrate that he was subjected to a substantial risk of harm, current or future, from exposure to ETS and that this substantial risk was caused by the deliberate refusal of Defendants to remedy the situation when they could have. The Second Circuit has ruled that "a plaintiff [may state] a cause of action under the Eighth Amendment by alleging that prison officials have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health.'" Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002) (quoting Helling, 509 U.S. at 35). Defendants argue, however, that Braxton has failed to allege any substantial injury resulting from ETS exposure, either in the Complaint or in his grievances. Even if he had alleged substantial injury, Defendants argue that Braxton has failed to plead facts demonstrating that Defendants were deliberately indifferent to his health or welfare. (Def. Br. 8-10)

In the Complaint, Braxton refers to "irritation" he experienced due to secondhand smoke (Cmplt. ¶ 26), and alleges that "exposure to unreasonable levels of Secondhand smoke posed a risk of serious damage to Plaintiff's current and future health . . .[and that he] continues to suffer from nausea, headaches, and congestion as a proximate result of Defendants deliberate indifference." (Cmplt. ¶ 49) In his opposition brief, Plaintiff attaches medical records demonstrating that he has repeatedly complained to physicians over a period of years about lung and nasal congestion due to secondhand

8

smoke.  (Opp. Exs. 1-2, 35-41)  Plaintiff also alleges in his brief that he "suffered

blackouts due to secondhand smoke, and was admitted to the emergency room with

respect to blackouts."  (Opp. at 2 n.1)  In support of this allegation, Braxton submits an

emergency room record from Bellevue Hospital dated May 10, 2009, in which the doctor

states: "Please arrange for the patient to be in non-smoking quarters."  (Id. Ex. 2)

   While these documents do not establish that Plaintiff has suffered a

serious injury or faces a risk of future harm, they suggest with sufficient plausibility that

Plaintiff may be able to demonstrate through discovery that a serious present injury or a

future risk of serious injury exists.  See Davis v. New York, 316 F.3d 93, 100-01 (2d Cir.

2002) (finding plaintiff's allegations "that the smoke caused him to suffer dizziness,

difficulty breathing, blackouts, and respiratory problems. . . . are not mere conclusory

allegations, but may be sufficient to create an issue of fact as to the level of smoke to

which [plaintiff] was exposed and, thus, whether his Eighth Amendment rights were

violated").  Affidavits from the medical personnel who treated Plaintiff, for example,

might describe his ETS-triggered congestion as chronic and severe, or otherwise shed

light on the status of Plaintiff's health.  Affidavits from fellow inmates, similarly, could

establish that indoor smoking in Plaintiff's vicinity was excessive, commonplace, and

ignored by prison officials.  See Enigwe v. Zenk, No. 03 Civ. 854 (CBA), 2007 WL

2713849, at *4 (E.D.N.Y. Sept. 14, 2007).  Accordingly, dismissal for failure to allege

substantial injury is inappropriate.[5]

---

[5] The cases cited by Defendants are inapposite, as the plaintiffs in those cases either
submitted no medical records or failed to allege that they suffered from serious medical
conditions caused by prison conditions.  In Enigwe v. Zenk, 2007 WL 2713849, at **2-6
(E.D.N.Y. Sept. 14, 2007), for example, the court granted defendant's motion for

9

Defendants also argue that even if Braxton could satisfy "the objective prong of the deliberate indifference test, he fails to adequately allege . . . subjective deliberate indifference," because "liability cannot be established simply by alleging that a problem existed unabated on a defendant's watch." (Def. Br. at 9-10) Defendants further contend that "[w]hether a prison has a non-smoking policy bears heavily on the question of deliberate indifference." Enigwe, 2007 WL 2713849, at *6 (citing Helling, 509 U.S. at 36).

To state a valid claim, Plaintiff must allege and later adduce evidence demonstrating a risk of harm from ETS exposure that was unreasonably high and dangerous to his future health, Warren v. Keane, 196 F.3d 330, 332-33 (2d Cir. 1999), and that prison officials "knew of the health dangers and yet refused to remedy [them]." LaBounty v. Coughlin, 137 F.3d 68, 72-73 (2d Cir. 1998). See also Shepherd v. Hogan, 181 Fed. Appx. 93, 95 (2d Cir. 2006) ("In order to be entitled to a jury trial, [plaintiff] must proffer evidence from which a reasonable juror could infer that (1) [defendant] was subjectively aware of the seriousness of [plaintiff's] situation, and (2) [defendant] had the ability to take some action that would have significantly alleviated [plaintiff's] ETS

---

summary judgment in part because Enigwe had not presented evidence that ETS had damaged his health. Discovery had revealed that Enigwe had never sought medical treatment for any of the health problems alleged in his complaint and had not previously reported severe health effects. Moreover, no physician had ever suggested that Enigwe was suffering health problems due to ETS exposure. Id. at **3-4. Enigwe had also failed to offer evidence to support the claim that he was exposed to unreasonably high levels of ETS – such as affidavits from other inmates – and his deposition testimony contradicted these allegations. Id. at *4. Here, in contrast, Braxton has supplied numerous medical records demonstrating that he complained of medical conditions caused by ETS exposure, and that a physician had requested that Braxton be moved to a non-smoking dormitory. In sum, neither Enigwe nor any other case cited by Defendants suggests that dismissal would be appropriate here.

exposure."). The pleadings and incorporated documents sufficiently allege unreasonable exposure to ETS due to deliberate indifference.

While "imperfect enforcement of [a non-smoking policy] alone may not support a finding of deliberate indifference," id. at *18 (citing Scott, 139 F.3d at 944), courts making such a finding have done so at summary judgment, after full discovery. See, e.g., Id. at *19. Here, there has been no discovery and it is not clear whether the indoor smoking ban was enforced consistently, if at all. In any event, Braxton has alleged more than imperfect enforcement of the indoor smoking ban.

Plaintiff has offered evidence that – through letters and grievances – he put prison officials, including Superintendent Nichols, on notice that inmates were smoking regularly in common spaces and that this was causing Plaintiff to experience "headaches as well as sinuses and nausea." (Pltf. Exs. 16, 18, 19) Indeed, Plaintiff's correspondence and grievances, and the allegations in his complaint, cite nearly constant exposure to ETS on a daily basis. (Cmplt. ¶¶ 19, 22, 24, 30, 37-38, 43; Schulman Dec. Exs. A, B; Pltf. Exs. 16, 18, 19)

In his grievances, Plaintiff discusses the secondhand smoke issue in detail. For example, in a March 2008 grievance, Plaintiff states:

> Irrespective to the Non Indoor Smoking Policy, inmates continue to smoke in the school administration's bathroom, cottage bathrooms, toilet stalls, shower rooms, dayrooms, and single rooms. Grievant asserts that because of the underenforcement, grievant is at risk to respiratory complications.
> . . .
> Grievant asserts that he is susceptibility [sic] to develop respiratory diseases because he is currently in a Block with 37 inmates whereas half of them are frequent or chain smokers. In 15-20 minute intervals they enter the Block bathrooms, dayrooms, bathrooms, bathroom stalls, shower

11

> rooms, and single rooms to smoke. Furthermore, grievant
> stats [sic] that he must hold his breath as he goes by and/or
> enter these rooms these rooms [sic], and raise his saliva
> dampened T-shirt to cover his nose and mouth while he is
> in these rooms. Grievant also states that he must raise his
> collar of his dampened T-shirt to cover his nose and mouth
> to avoid inhalation while he is in his room, when their
> smoking ritual begins. The ventilation is inadequate;
> therefore, your immediate assistance is appreciated. I also
> feel my health has been compromised, and my health and
> safety is in jeopardy. I request also the ventilation to be
> checked out because the smoke from the constant cigarette
> smoking takes quite a while to decrease the "level" of
> residual gases from the cigarettes smoke after they have
> left.

(Pltf. Ex. 34 at 9-10) Cf. Enigwe, 2007 WL 2713849, at *6 (granting summary judgment

where plaintiff did not assert that "he informed prison officials that the non-smoking

policy was being violated . . . [and] does not claim that he specifically told. . . . any prison

official [] that there was smoking in his cell or in other areas of the housing unit where

smoking was forbidden")

The Second Circuit has held that an "an official [may] exhibit[] deliberate

indifference to the rights of others by failing to act on information indicating that

unconstitutional acts were occurring." Johnson v. Newburgh Enlarged Sch. Dist., 239

F.3d 246, 255 (2d Cir. 2001). Braxton has offered three letters to the Superintendent as

well as a grievance demonstrating that he complained about the routine violation of the

indoor smoking ban and the deleterious effects of the secondhand smoke on his health.

This is sufficient to demonstrate on a motion to dismiss that prison officials were on

notice of the unreasonable exposure.[6]

---

[6] As the Court in Warren v. Keane, 196 F.3d at 332-33, stated in denying summary
judgment:

## III.   PLAINTIFF ALLEGES SUFFICIENT
## PERSONAL INVOLVEMENT OF DEFENDANTS

Defendants also argue that Plaintiff has inadequately pled their personal

involvement in the alleged constitutional violations (Def. Br. at 12), which is a

"prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484

(2d Cir. 2006) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).  Personal

involvement may be shown in one of five ways:

> [that] (1) the defendant participated directly in the alleged
> constitutional violation, (2) the defendant, after being
> informed of the violation through a report or appeal, failed
> to remedy the wrong, (3) the defendant created a policy or
> custom under which unconstitutional practices occurred, or
> allowed the continuance of such a policy or custom, (4) the
> defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference to the rights of
> inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Jean-Laurent v. Wilkinson, 438 F.

Supp. 2d 318, 325 (S.D.N.Y. 2006).

As an initial matter, supervisory officials are not liable under the doctrine

of respondeat superior. See, e.g., Iqbal, 129 S. Ct. at 1948 (2009) ("Because vicarious

liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each

---

> "plaintiffs' allegations, if believed, overwhelmingly
> describe a prison environment permeated with smoke
> resulting from, inter alia, under-enforcement of inadequate
> smoking rules, overcrowding of inmates and poor
> ventilation." Warren v. Keane, 937 F. Supp. 301, 305
> (S.D.N.Y. 1996). Until the facts are determined, we are
> unable to say that any prison official reasonably could have
> believed that the alleged severe exposure to ETS did not
> violate the plaintiffs' Eighth Amendment rights.

13

Government-official defendant, through the official's own individual actions, has

violated the Constitution."); Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d

Cir. 1989). Accordingly, Count II of Plaintiff's Complaint, entitled "Respondeat

Superior Liability," must be dismissed.[7]

        As for Plaintiff's deliberate indifference claims, the Supreme Court has

explained that "[a] claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 129 S.Ct. at 1949 (2009). "[W]here the well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"

Iqbal, 129 S.Ct. at 1949 (citing Fed. R. Civ. P. 8(a)(2)). As noted above, because

Plaintiff is proceeding pro se, the Court will consider facts alleged in and documents

attached to Plaintiff's opposition papers. Based on the Complaint and the supplementary

facts set forth in Plaintiff's opposition papers, the Court will not dismiss the Complaint

on the ground that Plaintiff has failed to adequately plead the Defendants' personal

involvement in the alleged constitutional violation.

### A.      **Defendant James Nichols**

        Plaintiff sent Defendant Nichols three letters informing him of frequent

indoor smoking by inmates and guards, as well as the symptoms Plaintiff experienced as

a result. It is also undisputed that Defendant Nichols reviewed Plaintiff's second

_____

[7] To the extent the Complaint could be read as asserting Section 1983 claims against the
Defendants in their official capacities, those claims are barred by the Eleventh
Amendment. See Hater v. Melo, 502 U.S. 21, 25-27 (1991); Ying Jing Can v. City of
New York, 996 F.2d 522, 529 (2d Cir. 1993).

14

grievance requesting the creation of a smoke-free dormitory. (See Def. Br. at 14) This grievance contained a detailed discussion of Plaintiff's exposure to ETS and the medical consequences he suffered. (See supra pp. 11-13) Defendants' argument that Superintendent Nichols "did not understand plaintiff to be complaining about underenforcement of the indoor smoking ban" (Def. Reply Br. at 6) is conclusory and is not a fair inference from the evidence currently before the Court.

Defendants also argue that Nichols may not have been aware of the letters addressed to him, given that Acting Superintendent Jacobson answered Braxton's first letter and that Nichols was not the superintendant as of April 2007. (Def. Br. at 14) This argument presents a question of fact that must be addressed through discovery, and cannot be resolved on a motion to dismiss. For purposes of Defendants' motion to dismiss, Plaintiff has demonstrated that it is plausible that Nichols was personally involved in the alleged failure to address Braxton's complaints.

## B. Defendants John Nuttall, Lucien J. Leclair, Jr., Gayle Haponik, Anthony J. Annucci, and Lester Wright

The Complaint fails to state a claim against the remaining Defendants.

For example, while the Complaint asserts that Defendants Annucci and Leclaire disseminated DOCS' no-smoking policy on November 8, 2000, it does not allege that they had any involvement with Plaintiff or his complaints and grievances.[8] (Cmplt. ¶ 16) Defendants Wright and Nutall are not mentioned at all in the Complaint's factual allegations. Defendant Haponik is mentioned only insofar as he directed Plaintiff to

---

[8] In any event, any claim based on November 2000 conduct would be barred by Section 1983's three-year statute of limitations. See Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997); Taylor v. City of New York Dept. of Hous., Preserv. & Dev., No. 08 Civ. 150 (JSR)(GWG), 2008 WL 2485410, at *3 (S.D.N.Y. Jun. 19, 2008).

15

submit his request for a non-smoking dormitory through the prison's grievance process. (Cmplt. ¶¶ 46-47)

In his opposition memorandum of law, however, Plaintiff alleges that Defendants Nuttal, Leclair, Haponik, Annucci and Wright were CORC panel members and were present at and responsible for the "appellate administrative review and decision" concerning Plaintiff's March 13, 2008 grievance. (Opp. at 12-13, 17) If these allegations are true, Plaintiff's grievance, quoted above, arguably could have put each of these defendants on notice of Plaintiff's claimed constitutional violations.

It is not clear in this Circuit whether mere membership on a grievance panel is sufficient to demonstrate "personal involvement" for Section 1983 purposes. In McKenna v. Wright, 386 F.3d 432 (2d Cir. 2004), plaintiff alleged an ongoing constitutional violation related to his serious liver disease, and argued that a deputy superintendent was liable because he had "denied treatment for McKenna by rejecting McKenna's grievance." McKenna, 386 F.3d at 437. The Circuit stated, in dicta, that "it is questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of,"[9] citing Joyner v. Greiner, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002), in which the court dismissed a claim against a superintendent based on his denial of the plaintiff's grievance regarding alleged inadequate medical care. In discussing this issue, however, the Circuit did not address

_____

[9] The Court found personal involvement because the deputy superintendent was responsible for the prison's medical program: "When allegations of improperly denied medical treatment come to the attention of a supervisor of a medical program, his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility." McKenna, 386 F.3d at 438.

16

earlier decisions which found personal involvement where a constitutional violation was brought to a supervisor's attention and the supervisor did not remedy the violation. See, e.g., Wright v. Smith, 21 F.3d 496, 502 (2d Cir. 1991) (finding personal involvement where defendant superintendent was notified of alleged due process violation through plaintiff's petition for a writ of habeas corpus but failed to provide a remedy); Williams v. Smith, 781 F.2d 319, 324 (2d Cir. 1986) (finding personal involvement where defendant superintendent denied plaintiff's appeal of an administrative hearing where plaintiff was deprived of his due process right to call witnesses).

Courts in this district are split as to whether review and denial of a grievance constitutes personal involvement in the underlying allegedly unconstitutional conduct.[10] See Burton v. Lynch, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009) (citing cases

––––––––––––––––––––

[10] Compare Burton v. Lynch, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009) (holding that personal involvement can be found where the grievance alleges an "ongoing" constitutional violation such that the "'supervisory official who reviews the grievance can remedy [it] directly'") (quoting Vega v. Artus, 610 F. Supp.2d 185, 198 (N.D.N.Y. 2009); Atkinson v. Selsky, No. 03 Civ. 7759 (LAK), 2004 WL 2319186, at *1 (S.D.N.Y. Oct. 15, 2004) (stating that "Williams v. Smith, 781 F.2d 319 (2d Cir. 1986), made it sufficiently clear that a prison official's denial of a grievance or grievance appeal is sufficient personal involvement to render that official liable under Section 1983"); Moore v. Scully, No. 90 Civ. 3817, 1993 WL 22129, at *3 (S.D.N.Y. Jan. 26, 1993) (denying summary judgment where plaintiff alleged that a disciplinary hearing violated due process and defendant superintendent affirmed result); Smith v. Tucker, No. 88 Civ. 2798, 1991 WL 211209, at *7 (S.D.N.Y. Oct. 4, 1991) (same) with Manley v. Mazzuca, No. 01 Civ. 5178, 2007 WL 162476, at *10 (S.D.N.Y Jan. 19, 2007) (dismissing claims where defendant superintendent denied plaintiff's grievance alleging improper medical treatment); Foreman v. Goord, No. 02 Civ. 7089, 2004 WL 1886928, at *7 (S.D.N.Y. Aug. 23, 2004) (dismissing claims against superintendent for lack of personal involvement where plaintiff complained of excessive use of force and superintendent denied grievance on appeal); Joyner v. Greiner, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) (dismissing claims against defendant superintendent who, on appeal, denied plaintiff's grievance for deliberate indifference to medical needs); Scott v. Scully, No. 93 Civ. 8777, 1997 WL 539951, at *4 (S.D.N.Y. Aug. 28, 1997) (same), abrogated on other grounds, Jenkins v. Haubert, 179 F.3d 19 (2d Cir. 1999).

and noting disagreement). Some courts have dismissed claims founded on the denial of a grievance (see supra note 10); some courts have found personal involvement where a grievance adjudicator investigated the prisoner's complaint, see Warren v. Goord, 476 F.Supp.2d 407, 413 (S.D.N.Y. 2007); others have made a distinction between a pro forma denial and a detailed response to a grievance, see Brooks v. Chappius, 450 F. Supp. 2d 220, 226 (W.D.N.Y. 2006); and still others have decided that personal involvement may be found where the grievance alleges an "ongoing" constitutional violation such that the "'supervisory official who reviews the grievance can remedy [it] directly.'" See Burton v. Lynch, 664 F. Supp. 2d at 360 (quoting Vega v. Artus, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009)); see also Hall v. Leclaire, No. 06 Civ. 0946 (GBD)(JCF), 2007 WL 1470532, at *10 (S.D.N.Y. May 22, 2007), adopted in relevant part, 2007 WL 2815624 (S.D.N.Y. Sept. 24, 2007). The "ongoing" constitutional violation analysis, of course, does not address the Circuit's dicta in McKenna, which involved an alleged ongoing constitutional violation that the defendant deputy superintendent could have remedied.

Given the uncertainty in the law and the lack of any discovery in this case, this Court will not dismiss Plaintiff's claims against the members of the CORC panel at this time. Discovery will reveal, inter alia, whether the members of the panel were in a position to remedy the alleged ongoing constitutional violation Plaintiff complains of.[11]

---

[11] Defendants also argue that the CORC panel members are not personally involved because they suggested to Plaintiff that his complaints about indoor ETS should be referred to security personnel. (Def. Reply Br. at 7). The CORC panel, however, did not make a formal referral of Plaintiffs' complaint to other prison personnel. Accordingly, the cases Defendants cite are not on point and this argument is unavailing.

## IV.   THE COMPLAINT WILL NOT BE DISMISSED
## ON QUALIFIED IMMUNITY GROUNDS

Qualified immunity protects government officials "from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (citing Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982)).  The defense shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow, 457 U.S. at 818.

The Second Circuit has held that "a traditional qualified immunity defense may [] be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint."  McKenna, 386 F.3d at 436.  Defendants are entitled to dismissal on qualified immunity grounds where the rights allegedly violated were not clearly established at the time of any alleged deliberate indifference, Islam v. Fischer, No. 07 Civ. 3225 (PKC), 2008 WL 110244, at *6 (S.D.N.Y. Jan. 9, 2008), or there is no plausible factual dispute as to "'whether . . . a reasonable police officer should have known he acted unlawfully. . . .'"  Id. (quoting Lennon, 66 F.3d at 421).  Where a complaint's allegations are such that "reasonable officials in defendants' positions could disagree as to whether defendants' . . . actions against plaintiff were unlawful," judgment as a matter of law on the issue of qualified immunity is appropriate on a motion to dismiss.  Id. (citing Lennon, 66 F.3d at 421).

Here, the rights at issue are clearly established.[12] The Supreme Court has acknowledged that exposure to secondhand tobacco smoke may satisfy the objective prong of an Eighth Amendment claim, Helling, 509 U.S. at 31-35, and the Second Circuit has held that the right not to be exposed to unreasonably high levels of ETS is "clearly established." Warren v. Keane, 196 F.3d at 333 ("We hold that after Helling, it was clearly established that prison officials could violate the Eighth Amendment through deliberate indifference to an inmate's exposure to levels of ETS that posed an unreasonable risk of future harm to the inmate's health."); see also Islam v. Fischer, 2008 WL 110244, at *6.

Moreover, Plaintiff's Complaint does not demonstrate that reasonable officials in Defendants' positions would not have known that they were acting unlawfully. "The plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." McKenna, 386 F.3d at 436 (holding pre-Iqbal that "not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief'" (internal citation omitted)).

Plaintiff has alleged sufficient facts to make plausible his claims that Defendants were deliberately indifferent to the violation of his constitutional rights. As the district court in Warren found, "plaintiffs' allegations, if believed, overwhelmingly

---

[12] Rights are "clearly established" when supporting Supreme Court or Second Circuit precedent existed at the time of the alleged unconstitutional conduct. See Russell v. Scully, 15 F.3d 219, 223 (2d Cir. 1994).

20

describe a prison environment permeated with smoke resulting from, inter alia, under-enforcement of inadequate smoking rules, overcrowding of inmates and poor ventilation." Warren v. Keane, 937 F. Supp. 301, 305 (S.D.N.Y. 1996); accord, Warren, 196 F.3d at 332-33 ("Until the facts are determined, we are unable to say that any prison official reasonably could have believed that the alleged severe exposure to ETS did not violate the plaintiffs' Eighth Amendment rights.") Absent further evidence, this Court cannot find that "[g]iven the known dangers of ETS, [] a reasonable person [in Defendants' position] would [not] have understood that exposing an inmate to high levels of ETS could violate the Eighth Amendment." Id. Accordingly, the Complaint will not be dismissed on qualified immunity grounds.

## V.    THE COMPLAINT WILL NOT BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants argue that the Complaint should be dismissed because Braxton failed to exhaust his administrative remedies. "Where it appears from the face of the complaint that a plaintiff concedes lack of exhaustion, or non-exhaustion is otherwise apparent, a court may decide the exhaustion issue on a Rule 12(b)(6) motion." Verley v. Goord, No. 02 Civ. 1182 (PKC)(DF), 2004 WL 526740, at *27 (S.D.N.Y. Jan. 23, 2004) (citing Rivera v. Pataki, No. 01 Civ. 5179 (MBM), 2003 WL 21511939, at *4 (S.D.N.Y. July 1, 2003); McCoy v. Goord, 255 F. Supp. 2d 233, 250-52 (S.D.N.Y. 2003)). Because failure to exhaust is an affirmative defense, however, exhaustion need not be pleaded in a complaint. See Jones v. Bock, 549 U.S. 199, 212 (2007). From the pleadings in this action, it is not evident that Braxton failed to exhaust his administrative remedies.

The Prison Litigation Reform Act ("PLRA") requires that "no action [] be brought with respect to prison conditions under section 1983 of this title, or any other

21

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until
such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a)
(1996). Under the PLRA, a plaintiff complaining about prison conditions must fully
utilize the prison facility's internal grievance procedures before filing suit. See Porter v.
Nussle, 534 U.S. 516, 532 (2002) (holding the exhaustion requirement applies "to all
inmate suits about prison life, whether they involve general circumstances or particular
episodes"). A plaintiff, in other words, must fully comply with the prison facility's
grievance rules and procedures and must appeal any issue raised through the highest level
of administrative review. See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 93,
95 (2006); Booth v. Churner, 532 U.S. 731, 735 (2001). These rules apply even where
the relief sought in an action – for example, money damages – is unavailable at the
administrative stage. See Grey v. Sparhawk, No. 99 Civ. 9871 (HB), 2000 WL 815916,
at *2 n.2 (S.D.N.Y. June 23, 2000). Where it is clear that a inmate did not exhaust his
administrative remedies, the court must dismiss the action. See Booth, 532 U.S. at 735;
Neal v. Goord, 267 F.3d 116, 117-18 (2d Cir. 2001); Harris v. Bowden, No. 03 civ. 1617
(LAD), 2006 WL 738110, at *2 (S.D.N.Y. Mar. 23, 2006) ("Statutory exhaustion
requirements are mandatory; courts may not dispense with them freely." (citing Bastek v.
Federal Crop Ins. Corp., 145 F.3d 90, 94 (2d Cir. 1998)).

        Three circumstances, however, may excuse a plaintiff from the PLRA's
exhaustion requirements: (1) when administrative remedies are not available; (2) when
defendants have either waived this defense or acted so as to estop them from raising the
defense; or (3) when special circumstances, such as a reasonable misunderstanding of the
grievance procedures, otherwise justify the prisoner's failure to comply with the

exhaustion requirement. Ruggiero v. County of Orange, 467 F.3d 170, 175-76 (2d Cir. 2006) (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

The "applicable procedural rules" are "defined not by the PLRA, but the [local] prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007). New York DOCS' Inmate Grievance Program ("IGP") procedures provide for a three-tiered process for adjudicating inmate complaints: First, a prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC") at each facility; second, a prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility; and finally, a prisoner may appeal an adverse decision by the superintendent to CORC. N.Y. COMP. CODES R. & REGS., tit. 7, § 701.7 (1999). An "expedited" process is also available for harassment grievances, id. § 701.11, which pertain to "[e]mployee conduct meant to annoy, intimidate, or harm an inmate." Id. § 701.11(a). See also Hemphill, 380 F.3d at 682-83. Harassment grievances are sent directly to the superintendent, id. § 701.11(b)(2), and the superintendent must initiate an investigation and render a decision. COMP. CODES R. & REGS., tit. 7, § 701.11(b)(3-5). A prisoner may then appeal to CORC. Id. § 701.11(b)(7).

The relevant DOCS regulations state that "the grievance must contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint." Id. § 701.7(a)(1)(i). The complaint form provides a space for the inmate to include a "[d]escription of [the] [p]roblem," and directs the inmate to be "as brief as possible" but to include a statement of the "[a]ction requested." Id. While New York IGP regulations do not require a prisoner's grievance to state the names of the alleged responsible parties, Espinal, 554

F.3d at 224, the inmate "must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004). "[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." Id. at 697 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).

Defendants argue that neither of Braxton's grievances "fairly raises the issue of underenforcement of DOCS's indoor smoking ban." (Def. Br. 20) As discussed above, however, Braxton's second grievance clearly communicates that indoor smoking is pervasive and is compromising his respiratory functions. (Pltf. Ex. 34 at 9-10) The fact that the CORC panel reviewing the grievance suggested that Braxton take up the issue with security staff demonstrates that the panel understood that Braxton was alleging a widespread violation of the indoor smoking ban. (Pltf. Ex. 8) Moreover, Braxton's first grievance makes clear that he is suffering lung irritation as the result of exposure to secondhand smoke. (Ex. A at 6)

Because the pleadings here do not demonstrate that Plaintiff failed to exhaust his administrative remedies, dismissal for failure to exhaust is not appropriate.

## CONCLUSION

For the reasons stated above, Count II of the Complaint is DISMISSED.

Defendants' motion to dismiss (Docket No. 9) is otherwise DENIED. The Clerk of the

Court is directed to terminate the motion.

Dated: New York, New York
      March 18, 2010

SO ORDERED.

Paul G. Gardephe
United States District Judge